UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JESSE JAMES ARCHER,

    Plaintiff,

    v.                          CAUSE NO. 1:25-CV-291-HAB-ALT

M. HOFFMAN,

    Defendant.

## OPINION AND ORDER

Jesse James Archer, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Archer alleges that, on June 3, 2025, he was on suicide watch in cell R5 at the DeKalb County Jail. The cell had one bunk and he was initially the only person assigned to the cell. By 5:00 p.m., a second and third individual had been assigned to the cell. When the inmates complained about the cell being overcrowded, Officer M. Hoffman told them to "deal with it." ECF 1 at 1.

The third inmate assigned to the cell was vomiting. The only place to do this was the floor drain. At some point in the evening, vomit splattered on Archer and his blanket became covered in vomit. Officer Hoffman knew this and said that there was nothing she could do, and they would have to deal with it. Archer begged Officer Hoffman to have the floor cleaned, let him shower, and provide a clean blanket. Officer Hoffman kept saying she was busy. At some point, an officer brought two new blankets, but the officer told Archer he would need to wait for another blanket to be washed. He asked Officer Hoffman how long it would be before he could get a clean blanket. She said it would be about an hour. An hour later, Officer Hoffman said she was about to put it in the dryer. Officer Hoffman continued to ignore Archer until her shift ended. When the new shift began, the guard checked on the blankets and found that they were not warm. Archer believes Officer Hoffman purposefully delayed drying or distributing the blankets because she previously wrote Archer up on a conduct violation and Archer was found not guilty of that violation. Arther further alleges that Officer Hoffman overheard a conversation between Archer and a nurse about his mental health. Archer contends she used that information to try to make his time on suicide watch as difficult as possible, but he offers no further explanation of what she did with information learned from that conversation.

As a pre-trial detainee, Archer's rights arise under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to

2

punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (citation omitted). Overcrowding, on its own, does not state a constitutional claim, and instead the court must look to the effects the overcrowding has on the conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 541 (1979) ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment, nothing even approaching such hardship is shown by this record.").

To state a claim that a jail condition violates the Fourteenth Amendment, a plaintiff must allege that a resulting pretrial condition "is 'imposed for the purpose of punishment,' or . . . the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless . . ..'" *Id.* at 856 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979)). Courts consider whether "the challenged governmental action is not rationally related to a legitimate governmental objective or [whether] it is excessive in relation to that purpose." *Id.* (quoting *Kingsley*, 576 U.S. at 398).

Here, Archer does not identify any effects from the overcrowding itself that rise to the level of a constitutional issue. The Fourteenth Amendment guarantees inmates "the minimal civilized measure of life's necessities," which includes "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quotation marks omitted). Archer was the first individual assigned to the cell, and it is unclear how long he was housed with two other

inmates, but the allegations in the complaint are limited to a portion of Hoffman's shift on a single day. Furthermore, Archer does not indicate that he was forced to sleep on the floor due to the overcrowding. But even if he had been assigned to sleep on the floor, that alone does not amount to a constitutional violation. *See Randle v. Gladieux,* No. 1-21-CV-425-HAB-SLC, 2022 U.S. Dist. LEXIS 26855 at *3-4 (N.D. Ind. Feb 15, 2022) ("[S]leeping on a mat on the floor, while uncomfortable, does not deprive a person of the minimal civilized measure of life's necessities."); *Rodmaker v. Krienhop*, No. 4:14-CV-070-TWP-TAB, 2014 U.S. Dist. LEXIS 100067 at *6 (S.D. Ind. July 23, 2014) ("[S]leeping on the floor does not punish a detainee so long as jail officials provide a mattress.").

Turning to the conditions of the cell, doing without a blanket for a handful of hours in June does not rise to the level punishment. Being held in a cell with vomit could potentially state a claim, but Archer does not indicate how much time passed before he was permitted to wash the vomit off his feet and legs. He does not indicate how much time passed before the cell floor was cleaned. He does not indicate how much time passed before the blanket with vomit was removed from the cell. These details are necessary to determine of Archer's complaint states a claim.

Archer may also be attempting to assert a first amendment retaliation claim against Officer Hoffman. Under the First Amendment, an inmate cannot be punished for engaging in certain kinds of speech. For example, filing a grievance qualifies as "protected activity" for purposes of a First Amendment claim. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). To assert a First Amendment retaliation claim, an inmate must

allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Id.* (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Archer asserts that Officer Hoffman was upset with him because he was not found guilty of a conduct report she brought against him. Archer does not identify any protected First Amendment activity. He likewise does not indicate when the conduct report was brought against him or when he was found not guilty of that conduct report. In short, even if he engaged in protected speech in relationship to the conduct report, Archer hasn't plead facts from which it can be plausibly inferred that the speech was a motivating factor in the decision to delay addressing the conditions in Archer's cell on June 3, 2025.

A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

This complaint does not state a claim for which relief can be granted. If Archer believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to complete the **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which will be provided by the clerk. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DIRECTS the clerk to send write this cause number on a blank **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form and send it to Jesse James Archer;

(2) GRANTS Jesse James Archer until **October 2, 2025**, to file an amended complaint; and

(3) CAUTIONS Jesse James Archer that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on August 28, 2025

s/ Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT